No. 11-17369 and 11-17460

In the United States Court of Appeals
for the Ninth Circuit
_____

ZEV LAGSTEIN, M.D.,

*Plaintiff - Appellant*, *Cross-Appellee,*

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, a foreign insuring entity,

*Defendant - Appellee, Cross-Appellant.*
_____

On Appeal from the United States District Court
for the District of Nevada
Cause No. 2:03-cv-01075-GMN-LRL

PLAINTIFF/APPELLANT'S OPENING BRIEF

Thomas L. Hudson, AZ Bar No. 014485
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
thudson@omlaw.com

Charles J. Surrano III, AZ Bar No. 007732
John N. Wilborn, AZ Bar No. 013714
SURRANO LAW OFFICES
3200 North Central Avenue, Suite 2500
Phoenix, Arizona  85012
(602) 264-1077
cjs@surrano.com
jnw@surrano.com

Julie A. Mersch, NV Bar No. 004695
LAW OFFICES OF JULIE A. MERSCH
1100 East Bridger Avenue
Las Vegas, Nevada  89101
(702) 387-5868
jam@merschlaw.com

**Attorneys for Plaintiff-Appellant,
Cross-Appellee**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................vi

INTRODUCTION ..............................................................................................1

JURISDICTION.................................................................................................3

ISSUES ..........................................................................................................3

ADDENDUM ...................................................................................................4

STATEMENT OF THE CASE AND FACTS .........................................................5

    I.    Lagstein's Claim for Disability and the Underlying
        Arbitration Awards.........................................................................5

        A.    In 2001, Lagstein Became Disabled from Practicing
                Medicine and Made a Claim Under His Disability
                Policy with Lloyd's.........................................................5

        B.    In 2003, After Lloyd's Unreasonable Delay in
                Deciding His Claim, Lagstein Sued Lloyd's and
                Lloyd's Demanded Arbitration .................................5

        C.    In Late 2006, the Arbitration Panel Entered Awards
                in Lagstein's Favor.....................................................6

    II.    The Prior Litigation over the Validity of the Awards...........................7

        A.    In 2007, the District Court Granted Lloyd's Motion
                to Vacate the Awards ..................................................7

        B.    In 2010, the Ninth Circuit Reversed and Remanded
                for Confirmation of the Awards..................................8

    III.    Proceedings Pertinent to Post-Award Interest .....................................8

        A.    In December 2010, Lloyd's Paid the Principal
                Amount Due on the Awards .......................................8

i

B.      Lagstein's Request to the Ninth Circuit to Include Instructions Concerning Interest in the Mandate ........................9

C.      The District Court's Ruling on Post-Award Interest ...............10

D.      The District Court's Ruling on Attorneys' Fees ......................10

STANDARD OF REVIEW ....................................................................11

ARGUMENT SUMMARY AND CLARIFICATION OF TERMINOLOGY ..................................................................................11

I.      The District Court Erred by Failing to Include Post-Award Interest on All Components of the Awards in the Judgment .............11

A.      Clarification of Terminology ....................................11

B.      Under Ninth Circuit Precedent, State Law Governs Prejudgment Interest in an FAA Diversity Action ..................13

C.      Under Nevada Law, Lagstein Is Entitled to Period II Interest ...................................................................13

D.      The District Court Misconstrued Nevada Law .........................14

II.     The District Court Erred by Finding Attorneys' Fees Unavailable in This Case ....................................................16

ARGUMENT ..........................................................................17

I.      Lagstein Is, as a Matter of Law, Entitled to Additional Interest on the Awards ..........................................................17

A.      Because This Is a Diversity Action, Post-Award/Prejudgment (Period II) Interest Is Determined by Nevada Law ....................................17

1.      The Ninth Circuit Applies Diversity Principles to FAA Actions, and Therefore Applies State Substantive Law in Such Actions ....................................17

2.     Under Settled Ninth Circuit Precedent, Prejudgment (Period II) Interest Is Considered "Substantive" and Governed by State Law in FAA Actions ................................................................18

B.     Lagstein Is Entitled to Period II Interest Under Nevada Law ..............................................................19

1.     Lagstein Is Entitled to Interest Under N.R.S. § 17.130, Which Provides for Interest in *All* Cases ...............................................................19

2.     Alternatively, Lagstein Is Entitled to Interest Under N.R.S. § 99.040 Because an Action Under the FAA Is an Action in Contract ........................20

C.     The Case Law Considering Other Similar Interest Statutes Confirms Lagstein Is Entitled to Period II Interest Under Nevada Law ......................................21

1.     The Ninth Circuit and Other Circuits Routinely Award Period II Interest if State Law Permits Any Type of Prejudgment Interest .................................21

2.     Most States Award Period II Interest to a Confirmed Arbitration Award ........................................23

D.     All Policy Considerations Favor Construing Nevada Law to Permit Period II Interest, and the Ninth Circuit Has Relied on Such Policy Considerations in Prior Cases ..............................................................24

E.     The District Court's Conclusion That Lagstein Is Not Entitled to Period II Interest Under Nevada Law Cannot Be Squared with the Pertinent Statutes or Case Law ...............................................................25

1.     Contrary to the District Court's Conclusion, *Mausbach* Supports Awarding Period II Interest Under Nevada Law ............................................26

iii

2.    The District Court's Holding Runs Contrary to the Plain Language of Nevada's Interest Statutes..................................................................28

3.    What Matters Under Federal Law Is Whether State Law Provides for Period II Interest, Regardless of the Label ...................................................30

F.    The District Court Correctly Rejected Lloyd's Other Arguments Raised Below ........................................................31

1.    Awarding Period II Interest Does Not Involve Any Prohibited "Modification" of the Award ...............31

2.    The Awards Themselves Do Not Preclude Post-Award Period II Interest .........................................33

II.    Interest Should Be Calculated at the Rate of 10.25%, or Alternatively 9.75%, on All Components of the Award....................34

A.    Lagstein Is Entitled to Interest at 10.25% Under N.R.S. § 17.130, or Alternatively at 9.75% Under N.R.S. § 99.040 ...........................................................35

1.    The Court Should Apply the 10.25% Interest Rate Pursuant to N.R.S. § 17.130 ...................................35

2.    Alternatively, the Court Should Apply the 9.75% Rate Applicable Under N.R.S. § 99.040 .............37

B.    All Components of the Awards Are Subject to Period II Interest......................................................................38

III.    The District Court Erred by Failing to Award Lagstein the Attorneys' Fees Incurred in Defending and Confirming the Award ...............................................................................40

A.    Because This Is a Diversity Action, the Substantive Law of the Forum State (Nevada) Applies to Lagstein's Claim for Post-Award Attorneys' Fees..................40

B.    Nevada Law Entitles Lagstein to His Attorneys' Fees Incurred Since the Arbitrator's Fee Award...............................41

iv

C.    The District Court Erred by Concluding That Federal Law Controls Lagstein's Entitlement to Fees in This Diversity Action ........................................................................ 42

     1.    The District Court Erroneously Relied on *Kim-C1* ............................................................................ 43

     2.    The District Court's Reliance on *Menke* Was Likewise Misplaced, and Ignores the Ninth Circuit's Criticism of Cases That Do Not Apply Diversity Principles in FAA Actions .................. 45

REQUEST FOR ATTORNEYS' FEES FOR SECOND APPEAL ........................ 46

CONCLUSION ............................................................................ 47

STATEMENT OF RELATED CASES .................................................... 49

CERTIFICATE OF COMPLIANCE ...................................................... 50

CERTIFICATE OF SERVICE ............................................................ 51

ADDENDUM ............................................................................

# TABLE OF AUTHORITIES

<u>**Page**</u>

**Cases**

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,
   508 F.3d 995 (11th Cir. 2007) ........................................................... 19, 30, 31

*AT&T v. United Computer Sys., Inc.*, 98 F.3d 1206 (9th Cir. 1996) ............... passim

*Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*,
   636 F.3d 562 (10th Cir. 2010) ........................................................................41

*Creative Builders v. Avenue Devs., Inc.*, 715 P.2d 308
   (Ariz. Ct. App. 1986) ................................................................. 19, 23, 27, 28

*Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312 (Alaska 1997) ......... 24, 33

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) .........................................................18

*Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994) ........................22

*In re Liquidation of: AZSTAR Cas. Co.*, 938 P.2d 76
   (Ariz. Ct. App. 1996) ................................................................................46

*Interdigital Commc'ns Corp. v. Fed. Ins. Co.*, 607 F. Supp. 2d 718 (E.D.
   Pa. 2009) ................................................................................ 11, 30, 32, 33

*Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*,
   560 F.3d 935 (9th Cir. 2009) ........................................................................18

*Kerala Props., Inc. v. Familian*, 137 P.3d 1146 (Nev. 2006) ................................37

*Kim-C1, LLC v. Valent Biosciences Corp.*, 756 F. Supp. 2d 1258
   (E.D. Cal. 2010) ................................................................................ 16, 43, 44

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) ....................40

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769
   (9th Cir. 2002) ................................................................................ 32, 40

*Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634
   (9th Cir. 2010) .......................................................................................... passim

*Lee v. Ball*, 116 P.3d 64 (Nev. 2005)........................................................35

*Lund v. Albrecht*, 936 F.2d 459 (9th Cir. 1991)............................ 18, 21, 29

*Lundgren v. Freeman*, 307 F.2d 104 (9th Cir. 1962) .................... 1, 22, 25

*Mausbach v. Lemke*, 866 P.2d 1146 (Nev. 1994)............................... passim

*McDaniel v. Berhalter*, 405 So.2d 1027 (D. Fla. 1981) ...........................33

*Menke v. Monchecourt*, 17 F.3d 1007 (7th Cir. 1994) ............... 16, 41, 45

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
     460 U.S. 1 (1983)..............................................................................17

*Nat'l Ave. Bldg. Co. v. Stewart*, 972 S.W.2d 649 (Mo. Ct. App. 1998).................24

*Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F. 2d 1154 (9th Cir. 1988)..... passim

*Paradise Homes, Inc. v. Cent. Sur. & Ins. Corp.*, 437 P.2d 78
     (Nev. 1968) ......................................................................................34

*Powers v. USAA*, 962 P.2d 596 (Nev. 1998) ...........................................39

*Ramada Inns v. Sharp*, 711 P.2d 1 (Nev. 1985) .....................................39

*Rickley v. Cnty. of Los Angeles*, 654 F.3d 950 (9th Cir. 2011) ...............11

*Sansone v. Metro. Prop. & Liab. Ins. Co.*, 572 N.E.2d 588
     (Mass. App. Ct. 1991) ............................................... 23, 24, 25, 31

*Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986).............. 22, 45

*SCIE LLC v. XL Reinsurance Am. Inc.*, 397 Fed. App'x 348, 351 (9th
     Cir. 2010)........................................................................................40

*Stokes v. Reeves*, 245 F.2d 700 (9th Cir. 1957) ....................... 2, 4, 40, 43

*Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59 (3d Cir. 1986)....................45

*Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314 (9th Cir. 1980) ......... 18, 40

*Trustees of the Constr. Indus. v. Redland Ins. Co.*, 460 F.3d 1253
     (9th Cir. 2006) ................................................................................46

*U.S. Fid. & Guar. v. Lee Invs. LLC*, 641 F.3d 1126 (9th Cir. 2011) .......................18

*United States v. Park Place Assocs., Ltd.*, 563 F.3d 907 (9th Cir. 2009) ........ passim

*Wilson v. Pac. Maxon, Inc.*, 714 P.2d 1001 (Nev. 1986) ................................. 20, 29

**Statutes**

28 U.S.C. § 1291 ...............................................................................................3

28 U.S.C. § 1332 ...............................................................................................3

28 U.S.C. § 1961 .............................................................................................13

Nev. Rev. Stat. § 17.130 ............................................................................ passim

Nev. Rev. Stat. § 18.010 .................................................................................42

Nev. Rev. Stat. § 99.040 ............................................................................ passim

710 Ill. Comp. Stat. § 5/14 .............................................................................44

Nev. Rev. Stat. § 689A.410 ........................................................... 6, 34, 41, 42

Or. Rev. Stat. § 82.010 ...................................................................................22

Tex. Rev. Civ. Stat. Ann. art. 5069-1.05 ........................................................22

**Rules**

Nev. Loc. Rule 54-16 ......................................................................................46

**Other Authorities**

Article XV, § 1 of the California Constitution .......................................................21

# INTRODUCTION[*]

This appeal concerns whether Plaintiff Zev Lagstein, M.D. is entitled to interest and attorneys' fees in connection with the arbitration awards (the "**Awards**") entered in his favor in 2006, but which Defendant Certain Underwriters at Lloyd's ("**Lloyd's**") failed to pay until 2010. During this more-than-four-year delay, Lloyd's not only failed to pay the Awards, but forced Lagstein to fend off aggressive and ongoing litigation aimed at overturning the Awards – Awards that arose out of Lloyd's (initial) five-year effort to avoid paying Lagstein's claim for disability benefits.

Applying diversity jurisdiction principles, the Ninth Circuit has repeatedly held that a party that successfully confirms an arbitration award pursuant to the Federal Arbitration Act ("**FAA**") is entitled to post-award interest at the applicable state rate if the party would have received such interest in state court. *See, e.g.*, *Lundgren v. Freeman*, 307 F.2d 104, 112 (9th Cir. 1962) (holding that because "Oregon courts would hold that interest runs from the date of the award" such interest should be awarded in the federal action); *AT&T v. United Computer Sys., Inc.*, 98 F.3d 1206, 1211 (9th Cir. 1996) (awarding post-award/prejudgment interest under California law because "the award of prejudgment interest under

---

[*] For the Court's convenience, the cases and statutes cited in this brief include hyperlinks to Westlaw. Cites to the district court record (ECF) and the Ninth Circuit record in the prior appeal (9th Cir. ECF) are also hyperlinked to the relevant ECF record items.

state law more fully compensates NAT for the loss of use of its money due to the delay occasioned by AT&T's actions"). The district court, however, concluded that post-award interest is not available under Nevada law, even though Nevada law includes a catch-all provision making interest available in ***all cases***. *See* Nev. Rev. Stat. ("**N.R.S.**") § 17.130(2) (providing for interest on judgments at a specified rate "[w]hen no rate of interest is provided by contract or otherwise by law. . ."). By construing Nevada's interest statute as not permitting post-award interest, the district court erred.

The district court also erred by failing to award Lagstein the attorneys' fees he incurred in fending off Lloyd's extensive and ongoing attacks on the Awards. Under settled Ninth Circuit precedent, "the claim under a state statute for attorneys' fees is characterized as substantive for the purpose of determining its applicability in the federal courts." *Stokes v. Reeves*, 245 F.2d 700, 702 (9th Cir. 1957). The district court, however, concluded that when a federal "court is confirming or vacating an arbitration award, federal procedural rules apply to the issue of whether or not attorney fees should be granted." (ECF-174 at 8.) It did so even though the Ninth Circuit has previously rejected creating such exceptions "for diversity actions seeking enforcement of arbitration awards under the Federal Arbitration Act . . . ." *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F. 2d 1154, 1155 (9th Cir. 1988) (citations omitted).

Accordingly, as set forth below, this Court should reverse and remand with instructions for the district court to amend the judgment to include post-award interest (as calculated below) and attorneys' fees.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332 (diversity) because Lagstein is a Nevada resident and Lloyd's is a foreign insurer. (*See* ECF-5 (Amended Complaint) ¶¶ 1-2.) After a remand from a prior appeal in this case, *see Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634 (9th Cir. 2010), the district court entered an order on September 15, 2011 confirming the Awards and denying in part Lagstein's request for post-award interest. (ECF-174.) It also denied Lagstein's request for attorneys' fees. (ECF-174.) The district court entered its final judgment (the "**Judgment**") on September 23, 2011. (ECF-177.) Lagstein timely filed his notice of appeal on October 4, 2011. (ECF-180.) This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES

1. In the Ninth Circuit, state law determines the interest rate applicable to prejudgment/post-award interest on an arbitration award. *Northrop*, 842 F.2d at 1155. Under Nevada law, interest is available as a matter of right in ***all*** cases from service of the complaint until all claims are paid. *See* N.R.S. § 17.130(2). Did the

3

district court err by concluding that Lagstein is not entitled to post-award interest on all components of the Awards under N.R.S. § 17.130(2)?

2.     Alternatively, did the district court err by failing to award post-award/prejudgment interest on all components of the Awards pursuant to N.R.S. § 99.040 because (1) that statute provides for interest in contract cases, and (2) "[a]n action under the FAA is an action in contract to enforce the arbitration provision." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 919 (9th Cir. 2009).

3.     Under settled Ninth Circuit precedent, "the claim under a state statute for attorneys' fees is characterized as substantive for the purpose of determining its applicability in the federal courts," meaning that Nevada law applies. *Stokes,* 245 F.2d at 702.  In light of that, did the district court err by concluding that "federal procedural rules apply to the issue . . . [of] attorney fees . . .," and therefore failing to awards fees?  (ECF-174 at 13.)

## ADDENDUM

Pursuant to Ninth Circuit Rule 28-2.7, the pertinent statutes are included in an addendum to this brief.

## STATEMENT OF THE CASE AND FACTS

The facts concerning the parties' underlying dispute are set forth in *Lagstein, 607 F.3d at 638-640*, and are briefly summarized here along with the procedural history pertinent to this appeal.

### I.    Lagstein's Claim for Disability and the Underlying Arbitration Awards

#### A.    In 2001, Lagstein Became Disabled from Practicing Medicine and Made a Claim Under His Disability Policy with Lloyd's

In 1999, Lagstein, a cardiologist, purchased a disability insurance policy from Lloyd's, which provided coverage if he became unable to practice medicine due to a disability.  *See id.* at 638.  In 2001, Lagstein developed a number of serious medical conditions, including heart disease, severe migraines, and neurological problems, which rendered him disabled from practicing medicine.  *Id.* Lagstein accordingly made a claim for benefits under his disability policy with Lloyd's.  *Id.*; (*see also* ECF-5 (Amended Complaint) ¶¶ 1-31).

#### B.    In 2003, After Lloyd's Unreasonable Delay in Deciding His Claim, Lagstein Sued Lloyd's and Lloyd's Demanded Arbitration

In September 2003, after Lloyd's failed to pay any benefits – or even decide his claim for approximately two years – Lagstein "filed a complaint in the United States District Court for the District of Nevada for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices."  *Id.*; (*see also* ECF-5).  "Upon Lloyd's motion, the district court stayed the lawsuit pending binding arbitration required by Lagstein's policy."  *Id.*; (*see also* ECF-22).

### C.     In Late 2006, the Arbitration Panel Entered Awards in Lagstein's Favor

In 2006, a three-member arbitration panel, which included retired Nevada Supreme Court Justice Charles E. Springer and retired Nevada Judge Jerry Carr Whitehead, conducted a six-day hearing.  *See id. at 638-39*.  On August 31, 2006, a majority of the arbitration panel (the "**Panel**") awarded Lagstein $900,000 in damages for unpaid benefits under his policy, $1,500,000 for breach of the covenant of good faith and fair dealing, $350,000 in attorneys' fees for defending the arbitration, and costs (including arbitrator fees).  (ECF-45 at 50-53.)  Pursuant to N.R.S. § 689A.410(1), which provides for interest on untimely paid insurance benefits, the Panel also awarded Lagstein interest on his contract benefits.  (*Id.* at 50.)  Lastly, the Panel determined that punitive damages were warranted, and set a hearing to determine the amount.  (*Id.* at 53.)

On December 14, 2006, following the punitive-damages hearing, the Panel awarded Lagstein $4 million in punitive damages.  (ECF-63 at 23.)  At that time, the Panel also revised the interest calculation for the unpaid benefits, and revised its ruling on costs, finding that "the costs of the arbitrators should be split equally between the parties even though Lagstein is the prevailing party . . . ."  (*Id.* at 11.)

As is typical, Lagstein did not at that time request any post-award interest because such interest only becomes relevant if the award is reduced to judgment without being paid.  Accordingly, with the exception of the pre-award interest set

forth in the Awards (which continued to accrue interest until paid), the Panel did not address the issue of post-award interest.

## II.     The Prior Litigation over the Validity of the Awards

### A.     In 2007, the District Court Granted Lloyd's Motion to Vacate the Awards

After losing the arbitration upon which it insisted, Lloyd's filed a motion to vacate the arbitration award, which included an extensive and aggressive attack on the Panel.  (*See, e.g.*, ECF-70, 71.)  Among other things, Lloyd's argued that members of the Panel should have disclosed their involvement in a decade-old, highly-publicized controversy involving the Nevada Supreme Court – a controversy that had nothing to do with the parties or the arbitration.  *See Lagstein, 607 F.3d at 639-40*.

The district court (Jones, J.) correctly rejected Lloyd's principal argument for vacating the Awards, finding "that there has been no showing of an inappropriate relationship or contact between the judges, nor a failure to disclose information that would warrant vacating the award."  (ECF-128 at 3.) Nevertheless, on August 14, 2007, the district court – without the benefit of hearing the extensive evidence concerning Lloyd's egregious misconduct – vacated the Awards, finding that they were excessive and in "manifest disregard of the law."  (*Id.*)

7

**B.    In 2010, the Ninth Circuit Reversed and Remanded for Confirmation of the Awards**

In 2007, Lagstein appealed the district court's order to this Court.  (*See* ECF-130.)  On June 10, 2010, the Ninth Circuit "reverse[d] the district court's vacatur of the arbitration awards and remand[ed] for confirmation of all of the awards." *See Lagstein*, 607 F.3d at 647.  As the Ninth Circuit explained, given the record, "the district court's conclusions . . . are without support" and "puzzling." *Id*. at 641 n.4.

Lloyd's subsequently filed a petition for panel rehearing and rehearing en banc with the Ninth Circuit, as well as a petition for certiorari with the Supreme Court, both of which were denied.  (*See* 9th Cir. ECF-54, 56 , 64, 65.)

## III.    Proceedings Pertinent to Post-Award Interest

**A.    In December 2010, Lloyd's Paid the Principal Amount Due on the Awards**

After the Ninth Circuit issued its opinion, but before the mandate issued, the parties entered into a stipulation requiring Lloyd's to deposit $7,400,000 into the district court's registry to cover amounts Lloyd's had agreed to pay if the Supreme Court denied its petition for certiorari.  (ECF-146 Ex. B.)  Pursuant to this stipulation, on December 20, 2010, the district court clerk paid Lagstein $7,315,975.34.  (ECF-149.)  This amount covered the principal amount of the underlying Awards ($6,943,950.17) plus the pre- and post-award interest that Lloyd's agreed was due on the $900,000 contract damage award (totaling

8

$372,025.17).  In the stipulation, Lagstein reserved the right to request "amounts in addition to the security . . . ," if he became the ultimate prevailing party.  (ECF-146 Ex. B.)

### B.     Lagstein's Request to the Ninth Circuit to Include Instructions Concerning Interest in the Mandate

On January 6, 2011, after confirming that post-award interest should be included in the Judgment, Lagstein filed a motion asking the Ninth Circuit to include in the mandate instructions concerning pre- and post-judgment interest. (9th Cir. ECF-66.)  In that motion, Lagstein explained that he is entitled to interest, as a matter of law, from the date of the Awards until entry of judgment on remand pursuant to Nevada law, and post-judgment interest at the federal rate after entry of judgment on remand.  (9th Cir. ECF-66 at 5-11.)

Lagstein further acknowledged, however, that "if the [Ninth Circuit] . . . is inclined to have the district court consider the interest issue in the first instance and is inclined to agree that the state rates should apply until the awards are confirmed on remand, it need not specify anything about interest in the mandate . . . ."  (9th Cir. ECF-66 at 11 n.7.)  The next day, the Clerk of the Ninth Circuit issued the mandate without specifying anything about interest.  (ECF-155.)  On January 24, 2011, without awaiting a response from Lloyd's, the Ninth Circuit denied Lagstein's motion as moot.  (ECF-161.)

9

### C.    The District Court's Ruling on Post-Award Interest

Upon remand, Lagstein filed in the district court a Motion to Enter Order Confirming the Arbitration Awards and Enter Judgment with Post-Award Interest and Arbitrator Fees.  (ECF-162, 167.)  Lagstein explained that although the district court could not award any pre-award interest, it should include in the Judgment interest at the applicable state rate commencing from the date of the Awards until entry of the federal court judgment.  Lagstein also asked that the Judgment include his award of arbitrator fees.  (ECF-162, 167.)

After briefing and without the benefit of oral argument, the district court denied Lagstein's request for post-award interest on all components of the Awards, awarding only the remaining interest due on the contract damages.  (ECF-174 at 10.)  The district court, however, agreed that the parties must equally split the arbitrator fees.  (ECF-174 at 11-12.)

### D.    The District Court's Ruling on Attorneys' Fees

After prevailing in the litigation over the validity of the Awards, Lagstein timely filed a request for attorneys' fees in the Ninth Circuit.  (9th Cir. ECF-58.)  He also filed a motion to transfer the fee request to the district court.  (9th Cir. ECF-59.)  The Ninth Circuit transferred the fee request, which Lagstein supplemented per the district court's request.  (*See* ECF-153.)  After briefing by both parties, and without argument, the district court denied Lagstein's request for

10

fees, finding that federal law, not state law, governed the fee award.  (ECF-174 at 12-14.)  This appeal followed.  (ECF-180.)

## STANDARD OF REVIEW

The Court should review the district court's calculation of interest *de novo* because it turns on issues of statutory interpretation.  *See AT&T,* 98 F.3d at 1209 ("Although a district court's calculation of prejudgment and postjudgment interest is usually reviewed for abuse of discretion, [citation omitted] we review *de novo* when it involves statutory interpretation of 28 U.S.C. § 1961.").  The Court should likewise review the "questions of law" in this case concerning Lagstein's entitlement to fees *de novo*.  *Rickley v. Cnty. of Los Angeles,* 654 F.3d 950, 953 (9th Cir. 2011).

## ARGUMENT SUMMARY
## AND CLARIFICATION OF TERMINOLOGY

I.   **The District Court Erred by Failing to Include Post-Award Interest on All Components of the Awards in the Judgment**

A.   **Clarification of Terminology**

As a threshold matter, there is some "confusion" in the case law due to the "various designations used by courts" for the interest due from the date an arbitration award is entered until it is reduced to judgment in federal court. *Interdigital Commc'ns Corp. v. Fed. Ins. Co.,* 607 F. Supp. 2d 718, 724 n.19 (E.D. Pa. 2009) (noting that courts have used the terms "post-award," "post-judgment," and "prejudgment" all to refer to the period running from the "issuance

of the award . . . through the entry of judgment by the Court.").   Indeed, the district court, although aware of this confusion, erroneously gave undue weight to the label "postjudgment" when the relevant question is simply whether under state law a party is entitled to interest before entry of a judgment – *regardless of the label*.

To avoid this confusion, this brief uses three neutral labels to describe the three relevant time periods:  "**Period I**" to refer to the period before entry of a final arbitration award (referred to as both "pre-award" and "prejudgment" in the case law); "**Period II**" to refer to the time that runs from the date of an arbitration award until entry of a judgment confirming the award (referred to as "prejudgment," "post-award," and "postjudgment" in the case law); and "**Period III**" to refer to the period after the entry of a judgment confirming the arbitration award (referred to as "post-award" and "postjudgment" in the case law).

With those clarifications, the law in this area is straightforward and settled. Although courts may not, in confirming an arbitration award, provide the successful party additional Period I interest (because doing so constitutes a prohibited modification of the arbitration award), a court is generally obligated to award Period II interest and Period III interest because the right to that interest derives from state and federal law (rather than the arbitration award itself).  *See*

Argument Section I.  With those clarifications in mind, Lagstein is unequivocally entitled to Period II interest under Nevada law.

**B.    Under Ninth Circuit Precedent, State Law Governs Prejudgment Interest in an FAA Diversity Action**

Under settled Ninth Circuit precedent, if the district court's jurisdiction is based on diversity, as it is in this FAA action, then state substantive law governs issues such as prejudgment interest.  *See* Argument Section I(A).  Accordingly, under settled Ninth Circuit precedent, a party that successfully confirms an arbitration award in federal court, as Lagstein did here, is entitled to (1) Period II interest at the pertinent state rates from the date of the entry of the award to the date the award is reduced to a formal judgment, and (2) Period III interest at the federal interest rate pursuant to 28 U.S.C. § 1961 after the district court enters judgment confirming the award.  *See* Argument Sections I(A)(2), I(C), and I(D).

**C.    Under Nevada Law, Lagstein Is Entitled to Period II Interest**

Under Nevada law, interest is available as a matter of ***right*** in all cases from service of the complaint until all claims are paid, which may include Period I, Period II, and Period III interest.  *See* N.R.S. § 17.130.  Interest is also available as a matter of right in contract cases pursuant to N.R.S. § 99.040, and "[a]n action under the FAA is an action in contract to enforce the arbitration provision." *Park Place*, 563 F.3d at 919.  *See* Argument Section I(B).  For good reason, the Ninth Circuit and other jurisdictions have consistently construed provisions similar to the

13

Nevada statutes as requiring Period II interest.  *See* Argument Section I(C), I(D).

Accordingly, the district court should have awarded Period II interest under

Nevada law on all components of the arbitration award at either the fixed rate of

10.75% under N.R.S. § 17.130 or, in the alternative, at the fixed rate of 9.75%

under N.R.S. § 99.040.  *See* Argument Section II.

### D.     The District Court Misconstrued Nevada Law

Instead of including such interest in the Judgment, the district court

concluded that "Nevada considers post-award interest to actually be awarded as

post-judgment interest."  (ECF-74 at 5.)  Accordingly, the district court reasoned,

because federal law, not state law, applies to awards of post-judgment interest,

"this court is strictly precluded under Nevada law from granting post-award (pre-

judgment) interest . . . ."  (*Id.* at 6.)

The district court's conclusion that Nevada treats post-award (Period II)

interest as post-judgment (Period III) interest (and therefore interest for Period II is

unavailable in a diversity action even though it would be available in a Nevada

action) is demonstrably incorrect.  As a threshold matter, the authority upon which

the district court relied, *Mausbach v. Lemke*, actually held that a judgment

confirming an arbitration award should, under N.R.S. § 17.130, include interest

"commencing from the date of entry of the award itself," 866 P.2d 1146, 1150

(Nev. 1994).  The district court, however, focused on the fact that *Mausbach* used

14

the label "postjudgment" to describe the interest "commencing from the date of entry of the award itself." *Id*. N.R.S. § 17.130, however, like other Nevada interest statutes, is in fact neither a "postjudgment" nor "prejudgment" statute, but rather specifies a start date for interest that accrues until paid, and therefore may include both periods. *Id.* Indeed, the Nevada Supreme Court has specifically rejected characterizing N.R.S. § 99.040 in terms of a "prejudgment" or "postjudgment" statute, and its reasons for so doing apply equally to N.R.S. § 17.130. *See* Argument Section I(E)(2).

Moreover, *Mausbach* clearly used the terms "prejudgment" and "postjudgment" as synonyms for pre-award and post-award. *Mausbach* focused principally on "prejudgment" interest, but that interest consisted of entirely pre-award/Period I interest. *Mausbach* then only used the term "post-judgment" once, and the very authority upon which it relied upon confirms this referred to both post-award (i.e., Period II) interest and true post-judgment (i.e., Period III) interest. *See* 866 P.2d at 1150. The district court simply misread *Mausbach* by giving undue weight to the opinion's imprecise language. *See* Argument Section I(E)(1).

Moreover, even if Nevada deemed post-award interest as "postjudgment" interest, doing so would not preclude a federal court from awarding Period II interest. What matters under federal law is that Nevada law provides for Period II interest, ***regardless of the label***. Because Nevada law provides for Period II

interest on all judgments, the district court erred by not including such interest in the Judgment.  *See* Argument Section I(E)(3).

## II.  The District Court Erred by Finding Attorneys' Fees Unavailable in This Case

In the Ninth Circuit, state substantive law likewise governs a party's entitlement to fees in a diversity action such as this.  *See* Argument Section III(A). Under Nevada law, Lagstein is entitled to attorneys' fees in connection with this action.  *See* Argument Section III(B).

Rather than look to state law, however, the district court concluded that "federal procedural rules apply to the issue . . . [of] attorney fees . . . ."  (ECF-174 at 13.)  In doing so, the district court erroneously relied upon another district court case, *Kim-C1, LLC v. Valent Biosciences Corp.*, 756 F. Supp. 2d 1258 (E.D. Cal. 2010).  That case, however, declined to award fees under the Illinois arbitration act because (1) the FAA, not the state arbitration act, applied, and (2) the pertinent Illinois statute did not even provide for fees.  Here, Nevada substantive law unrelated to the arbitration act provides for fees, meaning that state law governs. *See* Argument Section III(C)(1).

The district court also erroneously relied upon a Seventh Circuit case, *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994), which observed that the FAA does not provide for attorneys' fees.  However, whether the FAA provides for fees misses the point because it ignores that diversity jurisdiction

16

principles apply in the context of an FAA action.  Consistent with this Circuit's

precedent, the Court should apply state substantive law to the issue of attorneys'

fees.  *See* Argument Section III(C)(2).

## ARGUMENT

I.    **Lagstein Is, as a Matter of Law, Entitled to Additional Interest on the Awards**

    A.    **Because This Is a Diversity Action, Post-Award/Prejudgment (Period II) Interest Is Determined by Nevada Law**

        1.    **The Ninth Circuit Applies Diversity Principles to FAA Actions, and Therefore Applies State Substantive Law in Such Actions**

The FAA "is something of an anomaly in the field of federal-court

jurisdiction" in that "it does not create any independent federal-question

jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

26 n.32 (1983).  Instead, "there must be diversity of citizenship or some other

independent basis for federal jurisdiction" in an FAA suit.  *Id.*; *see also Park

Place*, 563 F.3d at 919 ("to be brought in federal court an action under the FAA

must have an independent basis for jurisdiction.").

"Typically," as in this case, "the diversity statute, 28 U.S.C. § 1332, supplies

jurisdiction for actions under the FAA." *Park Place*, 563 F.3d at 919 n.7. In such

cases, and consistent with general principles of diversity jurisdiction, the Ninth

Circuit looks to state law to resolve substantive issues.  *See, e.g.*, *Northrop*, 842

F.2d at 1155 (looking to diversity principles to resolve interest issues raised in an

FAA action); *Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("In determining whether an arbitration clause is unenforceable, a federal court sitting in diversity must apply the relevant state law."); *cf. Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) ("In this diversity action, the court must apply the substantive law of the forum state . . . .") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

### 2. Under Settled Ninth Circuit Precedent, Prejudgment (Period II) Interest Is Considered "Substantive" and Governed by State Law in FAA Actions

"Prejudgment interest in a diversity action is . . . a substantive matter governed by state law." *U.S. Fid. & Guar. v. Lee Invs. LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011) (internal quotation marks and citation omitted); *see also Lund v. Albrecht*, 936 F.2d 459, 464-65 (9th Cir. 1991) ("In diversity cases, state law governs the award[s] of prejudgment interest."); *Northrop*, 842 F.2d at 1155 ("The recognized general rule is that state law determines the rate of prejudgment interest in diversity actions."). Accordingly, in "diversity actions seeking enforcement of arbitration awards under the Federal Arbitration Act," state law determines a party's right to prejudgment (Period II) interest. *Northrop*, 842 F.2d at 1155 (holding that state law controls the rate of prejudgment (Period II) interest in FAA actions where the basis of jurisdiction is diversity and rejecting argument for creating an exception); *see also AT&T*, 98 F.3d at 1209-10 (same); *accord AIG*

*Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1002 (11th Cir. 2007)* ("We join our sister circuits that have addressed this question and hold that state law governs the availability and amount of prejudgment interest [Period II interest] in diversity cases involving the Federal Arbitration Act."). Accordingly, Nevada law governs Lagstein's entitlement to interest on the Awards from the date of their entry until entry of the judgment in this FAA action (i.e., Period II interest).

### B.    Lagstein Is Entitled to Period II Interest Under Nevada Law

#### 1.    Lagstein Is Entitled to Interest Under N.R.S. § 17.130, Which Provides for Interest in *All* Cases

Under Nevada law, interest is available as a matter of right in *all* cases from service of the complaint until all claims are paid:

> When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint *until satisfied* . . . .

N.R.S. § 17.130 (emphasis added).  Construing this statute, the Nevada Supreme Court has explained that a court in confirming an arbitration award may not award interest that pre-dates the award, but may award "post-judgment interest, *commencing from the date of entry of the award itself*," i.e., Period II interest. *Mausbach*, 866 P.2d at 1150 (emphasis added) (citing *Creative Builders v. Avenue Devs., Inc.*, 715 P.2d 308, 313 (Ariz. Ct. App. 1986)).

19

Significantly, although *Mausbach* used the label "post-judgment" to describe the interest "commencing from the date of entry of the award itself," *id.*, N.R.S. § 17.130, like other Nevada interest statutes, uses neither the term "postjudgment" nor "prejudgment." Instead, it specifies a start date for interest that accrues until paid, and therefore may include both periods. N.R.S. § 17.130 (interest accrues "from the time of service of the summons and complaint until satisfied . . . ."); *see also* N.R.S. § 99.040 (specifying that in contract actions interest accrues "upon all money from the time it becomes due"); *cf. Wilson v. Pac. Maxon, Inc.*, 714 P.2d 1001, 1002 (Nev. 1986) (explaining that N.R.S. § 99.040 is neither purely a prejudgment nor postjudgment interest statute because it "could include both prejudgment and postjudgment interest").

> ### 2. Alternatively, Lagstein Is Entitled to Interest Under N.R.S. § 99.040 Because an Action Under the FAA Is an Action in Contract

Alternatively, "(a)n action under the FAA is an action in contract to enforce the arbitration provision." *Park Place*, 563 F.3d at 919. Like many jurisdictions, Nevada also provides that "interest must be allowed" in contract cases:

> 1. When there is no express contract in writing fixing a different rate of interest, ***interest must be allowed*** at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases:
>
> (a) ***Upon contracts***, express or implied, other than book accounts.

20

N.R.S. § 99.040 (emphasis added).  Accordingly, Lagstein is alternatively entitled to Period II interest pursuant to N.R.S. § 99.040.

### C. The Case Law Considering Other Similar Interest Statutes Confirms Lagstein Is Entitled to Period II Interest Under Nevada Law

Similar state interest statutes, and how they are treated in the context of a confirmed arbitration award, confirm that Lagstein is entitled to Period II interest in this case.

#### 1. The Ninth Circuit and Other Circuits Routinely Award Period II Interest if State Law Permits Any Type of Prejudgment Interest

Faced with similar statutes in diversity actions, federal courts routinely award prejudgment (i.e., Period II) interest.  In *Lund*, for example, the Ninth Circuit, sitting in diversity, looked to California law to determine the available prejudgment interest.  The pertinent provisions stated in pertinent part that "[t]he rate of interest upon a judgment rendered in any court of this state shall be . . . ." 936 F.2d at 465 (quoting Article XV, § 1 of the California Constitution).  The Court noted that "[s]ubsequent California case law has construed these provisions to apply to pre- and post-judgment interest alike" – just like Nevada.  *Id.* Accordingly, the Ninth Circuit held that the claimant was entitled to prejudgment (Period II) interest under this provision of California law through entry of the

21

judgment in district court. *See also Northrop,* 842 F.2d at 1155 (California

prejudgment interest statute governs post-award interest).

In *Lundgren v. Freeman*, the Ninth Circuit held that Oregon's general

interest statute, which provides for interest on all "moneys after they become

'due,'" likewise entitles a party in an FAA action to Period II interest. 307 F.2d at

112 (citing Or. Rev. Stat. § 82.010(1)). Explaining that "[i]t should be the rule"

that parties comply with an arbitration award "without the necessity of court

proceedings," the Ninth Circuit concluded that "the date of the award, unless the

award be modified by the court, should be the latest date when interest begins." *Id.*

Similarly, the Fifth Circuit, looking to Texas law in an FAA diversity action,

held that because "[u]nder Texas law, prevailing parties receive prejudgment

interest as a matter of course . . . [a]n arbitration award bears interest in the same

manner as a judgment of a court of last resort in Texas." *Executone Info. Sys.,*

*Inc. v. Davis*, 26 F.3d 1314, 1329-30 (5th Cir. 1994) (citations omitted). Although

not cited in *Executone*, the case presumably referred to the Texas interest rate

statute then in effect, which provided in pertinent part that "all judgments of the

courts of this state earn interest at [a specified calculated rate]." *See* Tex. Rev. Civ.

Stat. Ann. art. 5069-1.05, § 2 (quoted in *Schlobohm v. Pepperidge Farm, Inc.*, 806

F.2d 578, 583-84 (5th Cir. 1986)) (subsequently repealed).

22

### 2.    Most States Award Period II Interest to a Confirmed Arbitration Award

The majority of state courts that have considered whether interest is available on arbitration awards have likewise held that if a party is entitled to interest that pre-dates the entry of judgment in a non-arbitration case, a party is entitled to such interest in an arbitration case with one caveat: *a court may only award Period II and III interest, and not Period I (pre-award) interest*. For example, in *Creative Builders* – the leading case relied upon by the Nevada Supreme Court in *Mausbach* – the court held that in confirming an arbitration award, a trial court may not award any additional "pre-award interest," but may award "interest from the date of entry of the award itself." 715 P.2d at 313. As that case explained, "[t]he general rule in other jurisdictions, in the absence of statutory provisions requiring a different result, is that *interest accrues from the date the award is entered*." *Id.* (citing cases) (emphasis added).

Similarly, in *Sansone v. Metropolitan Property & Liability Insurance Co.*, the appellate court considered whether the trial court properly awarded both pre-award (Period I) interest and post-award/prejudgment (Period II) interest. 572 N.E.2d 588, 589-90 (Mass. App. Ct. 1991). Like Nevada law, Massachusetts law entitles a party to prejudgment interest "at the contract rate, if established, or at the rate [fixed by law] . . . ." *Id.* at 589 n.4 The court held that although any "pre-award damage claims, including interest" must "have been submitted to

23

arbitration," *id.* at 590, the confirming party could seek (and is entitled to) Period II interest, i.e., "post-award interest that runs from the date of the award," *id.* & n.7 (citing cases); *see also Nat'l Ave. Bldg. Co. v. Stewart*, 972 S.W.2d 649, 651 (Mo. Ct. App. 1998) (noting that "[t]here are a number of reported cases holding that a party obtaining an arbitration award is entitled to interest from the date of the award to the date of the judgment confirming it," and then discussing *Creative Builders* and citing *Mausbach*); *Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312, 1318 (Alaska 1997) (adopting rule that a court may award post-award interest in part because such a rule is "consistent with the holdings of many courts which have considered the question") (citing cases).

### D. All Policy Considerations Favor Construing Nevada Law to Permit Period II Interest, and the Ninth Circuit Has Relied on Such Policy Considerations in Prior Cases

The Ninth Circuit has also correctly recognized that "the award of prejudgment interest under state law more fully compensates [the prevailing party] . . . for the loss of use of its money due to the delay occasioned by [the challenger's] . . . actions." *AT&T,* 98 F.3d at 1211. For this reason, the Ninth Circuit has held that "equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party." *Id.* As the Ninth Circuit has explained, "[a]ny other result would penalize the prevailing party, and in certain circumstances might also encourage losing parties to instigate postjudgment

litigation so they can reap the benefits of a low interest rate." *Id.*; *see also*

*Lundgren*, 307 F.2d at 113 (noting policy favoring prompt payment of arbitration

award as one reason to construe Oregon's interest statutes as permitting Period II

interest); *Northrop,* 842 F.2d at 1155 (rejecting argument for not awarding

prejudgment interest because it "would penalize parties for choosing arbitration

rather than jury trial, contrary to the 'national policy favoring arbitration'")

(citation omitted); *Sansone*, 572 N.E.2d at 590 & n.7 ("To encourage 'swift

obedience' to the award without the necessity of court proceedings, the rule in

Massachusetts is that post-award interest runs from the date of the award" and

noting that "*[t]his is also true elsewhere*") (citations omitted) (emphasis added).

In this case, Lloyd's delayed for over ***four years*** before paying Lagstein a

dime on the Awards. During this time, Lloyd's kept the money for its own

purposes, while it forced Lagstein to go through years of litigation at his own

expense. It is difficult to conceive that Nevada – a state that makes interest

mandatory in every case to ensure prompt payment – would intend to deviate from

other jurisdictions by rewarding such conduct.

> **E.     The District Court's Conclusion That Lagstein Is Not Entitled to Period II Interest Under Nevada Law Cannot Be Squared with the Pertinent Statutes or Case Law**

Notwithstanding the above considerations, the district court, citing

*Mausbach*, concluded that "Nevada considers post-award interest to actually be

awarded as post-judgment interest." (ECF-74 at 5.) Accordingly, the district court reasoned that, because federal law, not state law, applies to awards of post-judgment interest, "this court is strictly precluded under Nevada law from granting post-award (pre-judgment) interest . . . ." (*Id.* at 6.)

The district court's conclusion that Nevada treats post-award (Period II) interest as post-judgment (Period III) interest (and therefore interest for Period II is unavailable in a diversity action even though it would be available in a Nevada action) is erroneous for at least three reasons.

### 1. Contrary to the District Court's Conclusion, *Mausbach* Supports Awarding Period II Interest Under Nevada Law

In *Mausbach*, "[s]hortly after the arbitrator's decision," the defendant "tendered a check to Mausbach in the full amount of the award." 866 P.2d at 1147. Mausbach then initiated confirmation proceedings "only for the purpose of obtaining prejudgment interest *from the date the lawsuit was filed*," i.e., Period I interest. *Id.* at 1148 (emphasis added). The district court "confirmed the arbitration award, . . . but denied Mausbach's request for prejudgment [Period I] interest" under N.R.S. § 17.130. *Id.* at 1147. Mausbach appealed. *Id.*

Given this procedural history, and the prompt payment of the *full* award, the issue in *Mausbach* concerned Period I interest. Following "the weight of authority," *Mausbach* held that "the district court properly declined to award prejudgment [Period I] interest when it confirmed the arbitrator's award in this

26

case." *Id.* at 1150.  However, citing *Creative Builders* **and likewise following the majority approach**, the court further clarified that its ruling does not "preclude the district court from awarding post-judgment [i.e., post-award/Period II] interest, **commencing from the date of entry of the award itself**." *Id.* (emphasis added). Read in context, *Mausbach*, like the majority of courts, merely held that a party confirming an award may recover Period II, but not Period I, interest.

Indeed, the opinion's context unequivocally demonstrates that *Mausbach* merely used the terms "prejudgment" and "post-judgment" as **synonyms** for pre-award (Period I) and post-award (Period II).  For example, although the principal issue concerned pre-award (Period I) interest, *Mausbach* framed the issue as "whether the district court, acting pursuant to N.R.S. § 17.130, may **add prejudgment** interest to a confirmed arbitration award." *Id.* at 1148-49 (emphasis added).  The court then proceeded to use the term "prejudgment interest" synonymously with "pre-award interest" throughout the opinion, including in its discussion of *Creative Builders*:

> In *Creative Builders,* the trial court awarded **prejudgment interest** *sua sponte* upon confirmation of an arbitration award in a contract case. The Arizona Court of Appeals reversed, holding that "the trial court erred in modifying the award so as to include **pre-award interest**." *Creative Builders*, 715 P.2d at 313.  The court reasoned that the party's entire claim was submitted to arbitration, including any claim for **pre-award interest**, and such claim "must be deemed to have merged in the arbitration award." *Id.* at 312; *accord McDaniel v. Berhalter,* 405 So.2d 1027, 1030 (D. Fla. 1981).

27

*Id*. at 1149 (emphasis added).

Lastly, *Mausbach* used the term "post-judgment" ***only once***, and again cited *Creative Builders*:  "Nor does our ruling preclude the district court from awarding post-judgment interest, commencing from the date of entry of the award itself.  *See Creative Builders*, 715 P.2d at 313."  *Id*. at 1150.   However, the very portion of *Creative Builders* the Nevada Supreme Court relied upon for this proposition stated (more precisely) that "[o]ur holding, however, does not preclude the trial court from awarding interest from the date of entry of the award itself . . . .  The general rule in other jurisdictions, in the absence of statutory provisions requiring a different result, is that interest accrues from the date the award is entered." *Creative Builders*, 715 P.2d at 313 (emphasis added).

In light of that, there is no reason to believe that Nevada – after purporting to follow the "weight of authority" – would stray from numerous well-reasoned decisions from other jurisdictions that have adopted "[t]he general rule" pursuant to which "interest accrues from the date the award is entered."  *Id*. at 313.  The district court misread *Mausbach* by giving undue weight to the opinion's imprecise language.

### 2.    The District Court's Holding Runs Contrary to the Plain Language of Nevada's Interest Statutes

The district court's conclusion also runs contrary to the plain language of N.R.S. § 17.130 and § 99.040.  Neither statute defines interest in terms of

28

"postjudgment" or "prejudgment." Rather, both statutes specify (1) a starting date for interest (one that predates the entry of any judgment), and (2) an ending date for interest (one that may extend beyond the entry of judgment). *See* N.R.S. § 17.130(2) (providing that a judgment generally "draws interest from the time of service of the summons and complaint until satisfied . . . ."); N.R.S. § 99.040 (providing that that interest accrues "upon all money from the time it becomes due . . . .").

Tellingly, the Nevada Supreme Court has specifically rejected characterizing N.R.S. § 99.040 in terms of a "prejudgment" or "postjudgment" statute because it "could include both prejudgment and postjudgment interest":

> ***By its terms,*** N.R.S. 99.040 ***is neither a prejudgment nor a postjudgment interest statute***. Instead, N.R.S. 99.040 provides an interest rate on "all money from the time it becomes due" and there is no limitation on the length of the period. ***This period could include both prejudgment and postjudgment interest.***

*Wilson*, 714 P.2d at 1002 (emphasis added). Similarly, "[b]y its terms," N.R.S. § 17.130 "is neither a prejudgment nor a postjudgment interest statute" because it covers both periods. *Id.* Accordingly, because the statute simply entitles a party to interest "commencing from the date of entry of the award," *Mausbach*, 866 P.2d at 1150, the district court erred. *Cf. Lund*, 936 F.2d at 465 (awarding prejudgment interest at California rate because California statute applied "to pre- and post-judgment alike.").

29

### 3. What Matters Under Federal Law Is Whether State Law Provides for Period II Interest, Regardless of the Label

Lastly, what matters when calculating interest on an arbitration award in federal court is *when* to begin applying the federal rate – not *whether* to apply the state rate *before* that time.  *See, e.g.*, AT&T, 98 F.3d at 1211 (explaining that the Court must "decide whether, since the state prejudgment interest rate is higher than the federal postjudgment interest rate, calculation of prejudgment and postjudgment interest should be based on the date of an *initial* judgment or on the date of a *later* enforceable judgment.").  Indeed, as one court explained, because under Pennsylvania law "***post-judgment interest*** [on an arbitration award] begins to run from the date of the award," the successful party "has a statutory entitlement to post-judgment interest, ***calculated from the date of the arbitration award*** . . . ." Interdigital, 607 F. Supp. 2d at 721 (citations omitted).  In other words, if a party is entitled to interest under state law from the "date of the award," the party is entitled to that interest in a diversity action ***regardless of the label***.  *See* AIG Baker, 508 F.3d at 1002 ("As in any other civil action based on diversity of citizenship, the district court must look to state law to determine the availability and amount of prejudgment interest when it enters a judgment . . . under the Federal Arbitration Act.").

**F.    The District Court Correctly Rejected Lloyd's Other Arguments Raised Below**

The district court implicitly rejected Lloyd's main arguments that (1) awarding Period II interest involves a prohibited "modification" of the award; and (2) the Award itself precludes any additional interest.  This Court should likewise reject these arguments.

**1.    Awarding Period II Interest Does Not Involve Any Prohibited "Modification" of the Award**

Contrary to Lloyd's assertion below, and as demonstrated above, the law is settled that any Period I interest must be set forth in the award and that awarding Period II interest does not involve any "modification" of the underlying arbitration award.  *See, e.g.*, *Northrop*, 842 F.2d at 1155 (holding that a party is entitled to Period II interest in the judgment confirming an arbitration award if permitted by state law); *AIG Baker*, 508 F.3d at 1002 ("The availability and amount of prejudgment interest does not depend on whether the district court confirms or modifies the award. . . .  As in any other civil action based on diversity of citizenship, the district court must look to state law to determine the availability and amount of prejudgment interest when it enters a judgment, regardless whether that judgment confirms or modifies an award under the Federal Arbitration Act."); *Sansone*, 573 N.E. 2d at 590 ("Authority elsewhere supports our view that pre-award interest should not be ordered by a court," but that the court should award

post-award interest "from the date of the award"); *Interdigital*, 607 F. Supp. 2d at 721 (noting that "no provision in the underlying arbitration award specifically provided for the statutory interest entitlement," but awarding interest because "the prevailing party . . . was entitled [to interest] under" the statute).

Decisively, both Period II and Period III are provided for by the judgment and by law – not the arbitration award – to compensate the prevailing party for the period *after* entry of the award. In other words, an award of interest is a separate award provided for in the judgment to which one does not become entitled until after confirmation of the underlying arbitration award. With respect to both Period II and Period III interest, the arbitration award remains unmodified, and the interest is set forth in the judgment. Such interest cannot, as a matter of law or logic, be considered any kind of "modification" of the award. *Cf. Northrop,* 842 F.2d at 1155 ("The district court's judgment should reflect what would have happened had the parties immediately complied with the awards instead of going to court.") (citation omitted). Unsurprisingly, the Ninth Circuit has specifically rejected this identical argument in the context of attorneys' fees. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769, 794-95 (9th Cir. 2002) ("The Tribunal, however, did *not* determine that attorney fees were unavailable, so the district court cannot be said to be impinging on the arbitrators' decision. That the Tribunal may have had the *power* to award attorney fees does not necessarily

preclude the district court from exercising its power to do so."), *vacated on other grounds by* 341 F.3d 987, 994 n. 11 (9th Cir. 2003) (en banc).

### 2. The Awards Themselves Do Not Preclude Post-Award Period II Interest

Lloyd's also argued below that the Awards themselves somehow preclude the Court from including Period II interest in the judgment. However, if a statute provides for prejudgment (Period II) interest as a matter of right, as in this case, then the successful party is entitled to such interest regardless of whether the award says nothing about it. *See, e.g.*, *McDaniel v. Berhalter,* 405 So.2d 1027, 1030 (D. Fla. 1981) (noting that because the arbitrator's award stated it "was in full settlement of 'all claims,'" it extinguished "interest predating the award," but that the final judgment should include interest accruing "after the date of the arbitration award."); *Ebasco Constructors*, 932 P.2d at 1317-18 (holding that any "award of prejudgment interest accruing prior to the arbitration award . . . must be made by the arbitrators," but that "it is appropriate for a court reviewing an arbitration award to add prejudgment interest to the award."); *Interdigital*, 607 F. Supp. 2d at 723 (noting that "[t]he arbitration award made no mention of interest due on this amount" but explaining that nevertheless a party is entitled to the "interest on the arbitration award which accrued between the issuance of the award and the Court's confirmation of the award."). Once again, Lloyd's argument runs contrary to settled law.

In this case, the Awards did not in any way purport to address **post-award** interest, and did not even mention N.R.S. § 17.130.  The Awards addressed only "pre-award" interest (i.e., Period I interest) on Lagstein's award of policy benefits (i.e., the "contract damages") pursuant to N.R.S. § 689A.410, which governs "health insurance."  Although that interest likewise accrues until paid, there is nothing in the Awards to suggest that by awarding pre-award interest under N.R.S. § 689A.410(1), the Panel intended to deprive Lagstein of the post-award interest he is due as a matter of right under N.R.S. § 17.130 or § 99.040.  Moreover, Lloyd's conceded below that Lagstein is entitled to Period III interest, and his entitlement to Period II interest is no different:  the **law** gives Lagstein the right to both.  The district court erred by concluding otherwise.

## II.    Interest Should Be Calculated at the Rate of 10.25%, or Alternatively 9.75%, on All Components of the Award

In terms of the amount of the Period II interest, the Nevada Supreme Court has instructed that "[t]hree items must be determined . . . :  (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied."  *Paradise Homes, Inc. v. Cent. Sur. & Ins. Corp., 437 P.2d 78, 83 (Nev. 1968)*.  In this case, the parties agree that any Period II interest runs from the date of the Awards.  The Parties disagree, however, on the rate of interest and whether Lloyd's can avoid paying interest on the punitive damages component of the award, notwithstanding its protracted delay in paying

34

the Awards.  As set forth below, the Court should apply a 10.25% interest rate (or in the alternative 9.75%) to the Awards.[**]

## A.  Lagstein Is Entitled to Interest at 10.25% Under N.R.S. § 17.130, or Alternatively at 9.75% Under N.R.S. § 99.040

### 1.  The Court Should Apply the 10.25% Interest Rate Pursuant to N.R.S. § 17.130

Pursuant to N.R.S. § 17.130, the pertinent interest rate is "equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent." N.R.S. § 17.130(2).  The interest due under N.R.S. § 17.130 is therefore determined by using "the single rate in effect on the date of judgment." *Lee v. Ball*, 116 P.3d 64, 67 (Nev. 2005) (holding that lower court erred by adjusting interest every six months).

No case has explicitly addressed which date should be used to calculate interest under N.R.S. § 17.130 in connection with an arbitration award, but in this case, there are three possibilities:  (1) the date of the Awards (August 31, 2006, and December 31, 2006), (2) the date the district court should have initially confirmed the Awards (May 29, 2007), or (3) the date the district court eventually confirmed

---

[**]  Because the district court erroneously concluded that Nevada law precluded an additional award of Period II interest, it never addressed how to calculate Period II interest under Nevada law.  However, because (1) resolving that issue involves purely legal questions, (2) Lagstein has been litigating this case in poor health since 2003, and (3) this is the second appeal in this matter, the Court should address the interest calculation issue.

the Awards after the Ninth Circuit reversed and remanded (September 23, 2011).

The applicable Nevada interest rate was 10.25% both when the Awards were

entered (in August and December 2006) and when they were vacated (in August

2007). *See* http://www.fid.state.nv.us/Prime/PrimeInterestRate.pdf (indicating

prime rate of 8.25% on July 1, 2006, and July 1, 2007) (last visited 2/12/2012).

However, by late 2011 when the district court finally confirmed the awards, the

rate had dropped to 5.25%. *See id.*

> As a threshold matter, *Mausbach* suggests that the arbitration award may

qualify as the "judgment" date for purposes of calculating interest. *See Mausbach,*

*866 P.2d at 1150*. Moreover, the Ninth Circuit has made clear that "[t]he district

court's judgment should reflect what would have happened had the parties

immediately complied with the awards instead of going to court." *Northrop, 842*

*F.2d at 1155* (citation omitted). In this case, that means using the date of the

Awards for purposes of determining the applicable interest rate.

> The Ninth Circuit has also held that when a court improperly vacates an

arbitration award and faces a choice about the applicable interest rate, the vacatur

date should be used as the judgment date for purposes of the interest calculation if

it "more fully compensates" the prevailing party "due to the delay occasioned by"

the losing party's actions. *AT&T, 98 F.3d at 1211*. In other words, Lagstein

should not be penalized because the district court erred by initially vacating, rather

than confirming, the Awards.  As the Ninth Circuit has emphasized, any other rule might "encourage losing parties to instigate postjudgment litigation so they can reap the benefits of a low interest rate."  *Id.*  Accordingly, although Lloyd's understandably urged the district court to allow it to benefit from the nearly four year delay it caused, the Court should reject that approach.

### 2.   Alternatively, the Court Should Apply the 9.75% Rate Applicable Under N.R.S. § 99.040

Alternatively, because this is "an action in contract to enforce the arbitration provision," *Park Place*, 563 F.3d at 919, the Court may apply N.R.S. § 99.040. Under § 99.040, the "date of the transaction for purposes of calculating the rate of prejudgment interest is the original signing of the contract." *Kerala Props., Inc. v. Familian*, 137 P.3d 1146, 1149 (Nev. 2006) (noting that rule and holding that attorneys' fees incurred in subsequent litigation were subject to interest at the rate determined by the contract signing date) (internal quotations and citation omitted). In this case, the arbitration agreement was signed in January 1999.  *See Lagstein*, 607 F.3d at 638 (noting that Lagstein obtained his policy in 1999); ECF-85-1 at U-01751 (Declaration of Insurance).  At that time, the Nevada prejudgment interest rate was 9.75%.  *See* http://www.fid.state.nv.us/Prime/PrimeInterestRate.pdf (last visited 2/12/2012).  Because the interest should be calculated so as to "more fully compensate[]" Lagstein, *AT&T*, 98 F.3d at 1211, the pertinent rate for the Period II interest can be no less than 9.75%.

37

## B.     All Components of the Awards Are Subject to Period II Interest

In the district court, Lloyd's contended that Nevada law did not entitle

Lagstein to Period II interest on the punitive damages portion of the Award.

Interest on an arbitration award, however, is just that – interest on the sum of the

*full* award.  There is nothing in Nevada's interest statutes that would allow a court

to exclude some portions of the award.  Presumably for that reason, *Mausbach* did

not focus on any components of the award, but instead stated that interest should

"commenc[e] from the date of entry of the award itself."  *Mausbach*, 866 P.2d at

1150.

Moreover, although no Nevada case has addressed the interest available on

punitive damages included in an arbitration award, the distinction the Nevada

Supreme Court has drawn outside of the arbitration context between pre- and post-

judgment interest supports permitting post-award interest on any punitive damages

included in an arbitration award.  Outside of the arbitration context, Nevada law

precludes prejudgment interest on punitive awards because the amount of the

award cannot be ascertained pre-trial:

> Prejudgment interest is viewed as compensation for use by defendant
> of money to which plaintiff is entitled from the time the cause of
> action accrues until the time of judgment; it is not designed as a
> penalty.  *Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976).  A
> plaintiff is never entitled to punitive damages as a matter of right;
> their allowance or denial rests entirely in the discretion of the trier of
> fact.  *Nevada Cement Co. v. Lemler*, 89 Nev. 447, 451, 514 P.2d 1180
> (1973).  Therefore, the amount of punitive damages to be awarded

cannot be ascertained until the trier of fact has heard all the evidence. ***Because the amount of punitive damages to be awarded is not known until the judgment is rendered, we hold that prejudgment interest may not be granted by a trial court on punitive damage awards.***

*Ramada Inns v. Sharp*, 711 P.2d 1, 2 (Nev. 1985) (emphasis added).  In contrast, Nevada law permits post-judgment interest on punitive damage awards because "[t]he purpose of post-judgment interest is to compensate the plaintiff for loss of the use of the money awarded in the judgment ***without regard to the elements of which that judgment is composed***."  *Powers v. USAA*, 962 P.2d 596, 605 (Nev. 1998) (internal quotations and citations omitted) (emphasis added).  Expressing the same rationale that justifies post-award interest, *Powers* further explained that failing to award interest on punitive damages "creates an incentive for the defendant to exploit the time value of money by frivolously appealing or otherwise delaying timely payment."  *Id.* (citation omitted).

Relatedly, and again echoing the justification for post-award interest, *Powers* further explained that awarding such interest provides "compensation to a successful plaintiff for the intervening time between entitlement to and actual payment of an award of damages."  *Id.* (internal quotations and citation omitted). *Powers* thus fully supports an interest award on all components of an arbitration award "commencing from the date of entry of the award itself."  *Mausbach*, 866 P.2d at 1150.

39

**III.    The District Court Erred by Failing to Award Lagstein the Attorneys' Fees Incurred in Defending and Confirming the Award**

**A.    Because This Is a Diversity Action, the Substantive Law of the Forum State (Nevada) Applies to Lagstein's Claim for Post-Award Attorneys' Fees**

As set forth in Argument Section I(B), the Ninth Circuit applies diversity jurisdiction principles to actions like this one.  Accordingly, "[i]n this diversity action, the court must apply the substantive law of the forum state," i.e., Nevada.  *Takahashi*, 625 F.2d at 316 (citation omitted).

Under settled Ninth Circuit precedent, "the claim under a state statute for attorneys' fees is characterized as substantive for the purpose of determining its applicability in the federal courts." *Stokes*, 245 F.2d at 702.  Accordingly, the Ninth Circuit generally applies state law to claims for attorneys' fees in diversity actions. *See, e.g.*, *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) ("A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees.").

Unsurprisingly, the Ninth Circuit has applied state law to determine the availability of fees when a party successfully confirms an arbitration award. *See, e.g.*, *Kyocera*, 299 F.3d at 793 ("In reviewing an arbitration award, a district court may award attorney fees on the contract at issue and under § 1717(a) of the California Civil Code," a California fee-shifting statute); *see also SCIE LLC v. XL Reinsurance Am. Inc.*, 397 Fed. App'x 348, 351 (9th Cir. 2010) (holding that "[t]he

40

district court did not err in awarding plaintiffs the attorney's fees and expenses incurred in . . . confirming the arbitration award" because of the pertinent state law governing the contract).

The Tenth Circuit has taken that same approach.  *See Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 571 (10th Cir. 2010) (holding that because diversity principles apply in an FAA action, state "law on attorney fees governs.").  As the Tenth Circuit explained, "[i]n diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes." *Id.* (internal quotations and citation omitted.) Accordingly, the Tenth Circuit held that "[b]ecause the district court's jurisdiction was based on diversity jurisdiction, Oklahoma [the forum state] law on attorney fees governs." *Id.*  In light of that, *Burlington* awarded the prevailing party the attorneys' fees incurred in "defending the [arbitration] board's final decision in court." *Id.*[***]

### B.    Nevada Law Entitles Lagstein to His Attorneys' Fees Incurred Since the Arbitrator's Fee Award

Under Nevada Law, a party is entitled to fees if it prevails on a claim made under Nevada's Unfair Claims Practices Act.  *See* N.R.S. § 689A.410 ("A court *shall* award costs and reasonable attorney's fees to the prevailing party in an action

---

[***] As noted below in Argument Section III(C)(2), the Seventh Circuit in *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994), reached a contrary conclusion, but in doing so failed to recognize that diversity principles apply.

brought pursuant to this section.") (emphasis added). Unlike some fee-shifting statutes, which give courts discretion over whether to award fees, Nevada's statute uses mandatory "shall" language. *Id.*; *cf.* N.R.S. § 18.010 ("[T]he court may make an allowance of attorney's fees to a prevailing party . . . [w]hen he has not recovered more than $20,000 . . . ."). Indeed, although Lloyd's maintained that the district court could not "modify" the award to include additional fees, it did not dispute Lagstein's entitlement to fees as a matter of Nevada law.

### C. The District Court Erred by Concluding That Federal Law Controls Lagstein's Entitlement to Fees in This Diversity Action

Rather than follow diversity jurisdiction principles and apply substantive Nevada law to Lagstein's fee claim, the district court applied federal law and concluded that "Plaintiff must show that there is federal authority that authorizes such an award." (ECF-174 at 13.) The district court reached this conclusion after concluding that "federal procedural rules" apply in an FAA action:

> Ordinarily, when a federal court sits in diversity, state law applies when deciding whether to allow attorney's fees because those fees are connected to the substance of the case. *See In re Larry's Apartment, L.L.C.*, 249 F.3d 382 (9th Cir. 2001). **However, when a federal court sits in diversity and the court is confirming or vacating an arbitration award, federal procedural rules apply to the issue of whether or not attorney fees should be granted**. *See Kim-C1, LLC v. Valent Biosciences Corp.*, 756 F.Supp.2d 1258 (E.D.Cal. 2010) ("there is a strong default presumption that the FAA provides the governing procedural rules, including review of the arbitration award for purposes of confirmation and vacatur.").

42

(*Id.*)  In light of that, the district court reasoned, "in order for Plaintiff to recover its [sic] attorneys' fees . . . , Plaintiff must show that there is federal authority that authorizes such an award."  (*Id.*)

The district court is wrong.  Although federal *procedural* rules apply in an FAA action, "the claim under a state statute for attorneys' fees is characterized as substantive for the purpose of determining its applicability in the federal courts." *Stokes,* 245 F.2d at 702.  Moreover, the very (non-binding) authority the district court cited for deviating from this settled principle, *Kim-C1*, confirms the district court erred.

### 1.    The District Court Erroneously Relied on *Kim-C1*

The district court relied on *Kim-C1*'s statement that "there is a strong default presumption that the FAA provides the governing procedural rules . . . ."  (*See* ECF-174 at 13.)  However, that statement occurred in the context of whether a choice-of-law provision (which stated "[t]his Agreement shall be construed, interpreted and governed in accordance with the laws of the United States of America and the State of Illinois, . . . .") required the court to apply the ***Illinois arbitration statute*** over the FAA.  *Kim-C1*, 756 F. Supp. 2d at 1262 (citation omitted).  In holding "that the FAA provides the governing procedural rules," the court followed the settled rule that "[a] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the

rules for arbitration." *Id.* (internal quotations and citation omitted).  That rule simply has no bearing on whether the court should apply state ***substantive*** law concerning a party's entitlement to fees in an FAA diversity action.

Additionally, the reason *Kim-C1* denied the fee request in that case supports awarding fees in this case.  In *Kim-C1*, the successful party requested fees pursuant to "the Illinois arbitration act." *Id.* at 1279.  The cited statute, however, said nothing about attorneys' fees, and instead merely provided that "[u]pon the granting of an order confirming, modifying, or correcting an award, judgment shall be entered in conformity therewith and be enforced as any other judgment." *Id.* (quoting 710 Ill. Comp. Stat. § 5/14).  The court predictably found the request "problematic" because (1) it had "determined that the procedures of the FAA, not the Illinois act, govern," and (2) "Illinois case law has determined that attorney's fees may not be awarded under" the cited statute. *Id.*

In this case, by contrast, N.R.S. § 689A.410(5) is part of Nevada's ***substantive*** law, not its arbitration act.  Moreover, the Panel already determined that Lagstein is entitled to fees under that statute.  Because fending off Lloyd's attack on the Awards was necessary to prevail in this diversity action, the district court should have awarded Lagstein his attorneys' fees.

### 2. The District Court's Reliance on *Menke* Was Likewise Misplaced, and Ignores the Ninth Circuit's Criticism of Cases That Do Not Apply Diversity Principles in FAA Actions

The district court also cited *Menke*, 17 F.3d at 1009 for the proposition that "there is nothing in the Federal Arbitration Act which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in the federal courts." (ECF-174 at 12.) However, whether the FAA includes any fee provision likewise misses the point because an action under the FAA is not within the court's federal question jurisdiction. Precisely for that reason, one must look to the forum state's substantive law on attorneys' fees in diversity cases like this one.[****]

Indeed, in connection with post-award interest, the Ninth Circuit has explicitly criticized cases that fail to recognize that diversity principles apply to FAA actions. *See, e.g.*, *Northrop*, 842 F.2d at 1155. In that case the defendant, citing *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986), argued "that an exception [to the rule that state law applies] should be created for diversity actions seeking enforcement of arbitration awards under the Federal Arbitration Act . . . ." *Id.* The Ninth Circuit rejected that argument because *Sun*

---

[****] *Menke* also erroneously relied on *Schlobohm*, 806 F.2d at 578. *See Menke*, 17 F.3d at 1009. But in that case, the losing party promptly paid the award, meaning that the issue concerned pre-award fees. *See Schlobohm*, 806 F.2d at 580 (explaining that the losing party "immediately paid the amount of the arbitrator's award . . . .").

*Ship* "rest[ed] on the faulty premise that suits under the Federal Arbitration Act lie within federal question jurisdiction." *Id.* Instead, the Ninth Circuit once again "applied state law . . . in a diversity suit under the Federal Arbitration Act . . . ." *See id.* The same criticism the Ninth Circuit made in *Northrop* applies here:

*Menke* rests "on the faulty premise that suits under the Federal Arbitration Act lie within federal question jurisdiction." *Id.* The district court erred by not awarding Lagstein's fees incurred after entry of the Awards in this action.[*****]

### REQUEST FOR ATTORNEYS' FEES FOR SECOND APPEAL

Lagstein requests his fees incurred in connection with this appeal pursuant to N.R.S. § 689A.410(5), as well as his costs.

---

[*****] Lagstein should also receive, as a component of any attorneys' fees award, his computerized research charges. *See Trustees of the Constr. Indus. v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (noting the "growing circuit consensus" of treating computerized research charges as attorneys' fees for purposes of fee awards, and awarding such fees under 29 U.S.C. § 1132); *cf.* Nev. Loc. Rule 54-16 (providing for an award as attorneys' fees "all costs sought to be charged as part of the fee award and not otherwise taxable" when such costs are provided in an itemized fashion); *In re Liquidation of: AZSTAR Cas. Co.*, 938 P.2d 76, 29 (Ariz. Ct. App. 1996) (computerized research charges may be recovered by the successful party as an element of an award of attorneys' fees).

## CONCLUSION

Lagstein is entitled to interest on $1,871,520.90 (consisting of $1,500,000 in damages for breach of the covenant of good faith and fair dealing, $350,000 in attorneys' fees, and $21,520.94 for the additional arbitrator fees awarded) from August 31, 2006, through December 20, 2010. Lagstein is also entitled to interest on $4,000,000 (consisting of punitive damages) from December 14, 2006, through December 20, 2010. The interest rate on all of these amounts should be the fixed rate of $10.75%, or alternatively no less than 9.75%. The Court should reverse or alternatively remand with instructions for the district court to amend the Judgment to include this interest, which totals $2,474,049.78 at the 10.75% rate, and $2,353,364.42 at the 9.75% rate.

Lagstein is also entitled to recover the attorneys' fees he has been forced to incur to force Lloyd's to pay the full Awards plus interest. Accordingly, the Court should reverse and remand with instructions to the district court to award Lagstein all fees incurred through the date of the filing of the second notice of appeal. This

. . .

. . .

. . .

. . .

. . .

47

Court should also award Lagstein his fees (and costs) incurred in connection with the second appeal.

RESPECTFULLY SUBMITTED this 13th day of February, 2012.

OSBORN MALEDON, P.A.

By s/ Thomas L. Hudson
    Thomas L. Hudson, 014485
2929 North Central Avenue, Suite 2100
Phoenix, Arizona  85012-2794

SURRANO LAW OFFICES
Charles J. Surrano III
John N. Wilborn
3200 North Central Avenue, Suite 2500
Phoenix, Arizona  85012

LAW OFFICES OF JULIE A. MERSCH
Julie A. Mersch
Nevada Bar No. 004695
1100 East Bridger Avenue
Las Vegas, Nevada  89101

Attorneys for Plaintiff-Appellant

48

## STATEMENT OF RELATED CASES

Lagstein is not aware of any related case pending in this Court.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B) because:

    ☒ this brief contains 11,351 words, excluding the parts of the brief exempted
    by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐ this brief uses a monospaced typeface and contains [state the number of]
    lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
    32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
    and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using
    Word 2007 with 14 point, Times New Roman font, or

    ☐ this brief has been prepared in a monospaced typeface using [state name
    and version of word processing program] with [state number of characters per
    inch and name of type style].

    Dated this 13th day of February, 2012.

                                              s/ Thomas L. Hudson
                                              Attorneys for Plaintiff-Appellant

50

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 13, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF System.

s/ Thomas L. Hudson
Attorneys for Plaintiff-Appellant

**Addendum to Plaintiff/Appellant's Opening Brief**

N.R.S. § 17.130        Computation of amount of judgment; interest

N.R.S. § 99.040        Interest rate when not fixed by express contract for certain types of transactions

N.R.S. § 689A.410      Approval or denial of claims; payment of claims and interest; requests for additional information; award of costs and attorney's fees; compliance with requirements

**N.R.S. § 17. 130. Computation of amount of judgment; interest**

1. In all judgments and decrees, rendered by any court of justice, for any debt, damages or costs, and in all executions issued thereon, the amount must be computed, as near as may be, in dollars and cents, rejecting smaller fractions, and no judgment, or other proceedings, may be considered erroneous for that omission.

2. When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied, at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent. The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.

CREDIT(S)

Amended by Laws 1979, p. 830; Laws 1981, p. 1858; Laws 1987, p. 940.

**Formerly** Civil Practice Act of 1911, § 329; RL (1912), § 5271; NCL (1929), § 8827.

**N.R.S. § 99.040. Interest rate when not fixed by express contract for certain types of transactions**

1. When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases:

(a) Upon contracts, express or implied, other than book accounts.

(b) Upon the settlement of book or store accounts from the day on which the balance is ascertained.

(c) Upon money received to the use and benefit of another and detained without his or her consent.

(d) Upon wages or salary, if it is unpaid when due, after demand therefor has been made.

The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.

2. The provisions of this section do not apply to money owed pursuant to chapter 624 of NRS which is governed by the provisions of NRS 624.630.

3. As used in this section, "book account" means a detailed statement which:

(a) Constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relationship;

(b) Shows the debits and credits in connection with that contract or fiduciary relationship and shows against whom and in favor of whom entries are made;

(c) Is entered in the regular course of business as conducted by such creditor or fiduciary; and

(d) Is kept in a reasonably permanent form and manner:

  (1) In a bound book;

(2) On a sheet or sheets fastened in a book or to backing but detachable therefrom;

(3) On a card or cards of a permanent character; or

(4) In any other reasonably permanent form and manner.

CREDIT(S)

Amended by Laws 1979, p. 830; Laws 1981, p. 1859; Laws 1983, p. 426; Laws 1987, pp. 558, 940; Laws 2001, c. 341, § 13, eff. Oct. 1, 2001; Laws 2005, c. 417, § 16, eff. July 1, 2005; Laws 2005, c. 427, § 34.

**Formerly** section 4 of chapter 34 of Laws 1861; Laws 1887, p. 82; Laws 1917, p. 351; RL (1919), § 2499; NCL (1929), § 4322.

**N.R.S. § 689A. 410. Approval or denial of claims; payment of claims and interest; requests for additional information; award of costs and attorney's fees; compliance with requirements**

1. Except as otherwise provided in subsection 2, an insurer shall approve or deny a claim relating to a policy of health insurance within 30 days after the insurer receives the claim. If the claim is approved, the insurer shall pay the claim within 30 days after it is approved. Except as otherwise provided in this section, if the approved claim is not paid within that period, the insurer shall pay interest on the claim at a rate of interest equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date on which the payment was due, plus 6 percent. The interest must be calculated from 30 days after the date on which the claim is approved until the date on which the claim is paid.

2. If the insurer requires additional information to determine whether to approve or deny the claim, it shall notify the claimant of its request for the additional information within 20 days after it receives the claim. The insurer shall notify the provider of health care of all the specific reasons for the delay in approving or denying the claim. The insurer shall approve or deny the claim within 30 days after receiving the additional information. If the claim is approved, the insurer shall pay the claim within 30 days after it receives the additional information. If the approved claim is not paid within that period, the insurer shall pay interest on the claim in the manner prescribed in subsection 1.

3. An insurer shall not request a claimant to resubmit information that the claimant has already provided to the insurer, unless the insurer provides a legitimate reason for the request and the purpose of the request is not to delay the payment of the claim, harass the claimant or discourage the filing of claims.

4. An insurer shall not pay only part of a claim that has been approved and is fully payable.

5. A court shall award costs and reasonable attorney's fees to the prevailing party in an action brought pursuant to this section.

6. The payment of interest provided for in this section for the late payment of an approved claim may be waived only if the payment was delayed because of an act of God or another cause beyond the control of the insurer.

1

7. The Commissioner may require an insurer to provide evidence which demonstrates that the insurer has substantially complied with the requirements set forth in this section, including, without limitation, payment within 30 days of at least 95 percent of approved claims or at least 90 percent of the total dollar amount for approved claims.

8. If the Commissioner determines that an insurer is not in substantial compliance with the requirements set forth in this section, the Commissioner may require the insurer to pay an administrative fine in an amount to be determined by the Commissioner. Upon a second or subsequent determination that an insurer is not in substantial compliance with the requirements set forth in this section, the Commissioner may suspend or revoke the certificate of authority of the insurer.

CREDIT(S)

Added by Laws 1991, p. 1328. Amended by Laws 1999, p. 1647; Laws 2001, c. 550, § 3, eff. Oct. 1, 2001; Laws 2003, c. 497, § 12, eff. Oct. 1, 2003.